JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL HELMS,<br><br>    Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>    Defendants. | Case No.: CV 17-03183 CBM<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION TO STRIKE AS MOOT** |

The matters before the Court are Defendants' motions to dismiss the Second Amended Complaint for failure to state a claim or, in the alternative, to strike portions of the Second Amended Complaint. (Dkt. Nos. 64, 66, 67.)

## I. BACKGROUND

This action involves an allegedly wrongful foreclosure of Plaintiff's residence located in Sunland, CA ("the Property"). (Dkt. No. 63 ("SAC").) On March 17, 2005, Plaintiff refinanced his mortgage on the Property with a loan from Defendant Wells Fargo Bank ("WFB"). (*Id.* ¶ 14.) The loan was secured with a Deed of Trust ("DOT") recorded against the Property on March 28, 2005. (*Id.*) The DOT named WFB as the lender and Fidelity National Title Insurance Company as the trustee. (*Id.*)

On July 21, 2011, Defendant First American Trustee Servicing Solutions ("FATSS"), "acting as agent for the trustee or beneficiary," issued a "Notice of Default and Election to Sell under Deed of Trust," which was recorded on July 25, 2011. (Dkt. No. 47-4.) On November 14, 2011, FATSS replaced Fidelity National Title Insurance Company as the trustee under the DOT. (Dkt. No. 47-3.) A series of Notices of Trustee's Sale regarding the Property were recorded between December 2011 and September 2015, but none of these resulted in a foreclosure sale being conducted.[1] (Dkt. Nos. 47-5, 47-6, 47-7, 47-8, 47-9, 47-10.)

On February 9, 2012, WFB assigned its beneficial interest under the DOT to Defendant Bank of America ("BOA"). (Dkt. No. 47-2.) Plaintiff alleges that the assignment was executed by a Wells Fargo employee who lacked the authority to execute the assignment, and that the assignment instrument was improperly notarized. (SAC ¶ 16.) Plaintiff also alleges that "during or about 2014," "after the origination and funding of his loan, the loan was … sold by defendant Bank of America to investors as a Mortgage-Backed Securit[y]." (SAC ¶ 17.) Plaintiff does not know who the transferee is. (*Id.*)

On December 1, 2015, FATSS—acting as the "duly appointed Trustee under and pursuant to [the] Deed of Trust"—issued a final "Notice of Trustee's Sale," noticing the sale of the Property for December 23, 2015 at 10:00 a.m. (Dkt. No. 47-11.) "On December 23, 2015, notwithstanding that Plaintiff had that day, according to his information and belief prior to the sale, filed a Bankruptcy Petition … Defendants allegedly conducted a foreclosure sale of Plaintiff's home." (SAC ¶ 21.) On April 11, 2016, Plaintiff's bankruptcy case was dismissed due to Plaintiff's failure to appear for examination at a mandatory meeting of the creditors. (Dkt. No. 47-28.) "Plaintiff is now informed and believes that the sale,

---

[1] A bankruptcy court later determined in 2016 that there had been "a scheme to hinder, delay, or defraud creditors that involved … [m]ultiple bankruptcy cases affecting the Property" and granted Bank of America *in rem* relief from automatic stays affecting the property. (Dkt. No. 40-26 at 5.) The order was recorded on August 12, 2016. (*Id.* at 1.)

which was recorded only during or about October of 2016, may have occurred at a later date and/or time than that alleged by defendants, or not in fact have occurred at all." (SAC ¶ 21.)

On February 22, 2016, Plaintiff filed an action in California Superior Court, asserting that the foreclosure sale had been unlawful and seeking to quiet title to the Property. (Dkt. No. 47-29.) Plaintiff recorded a Notice of Pendency of Action regarding the Property on March 2, 2016. (Dkt. No. 47-34.) On October 14, 2016, the California Superior Court dismissed Plaintiff's complaint without leave to amend. (Dkt. No. 47-33.) On November 22, 2016, FATSS executed a Trustee's Deed Upon Sale, conveying the Property to BOA and stating that BOA purchased the Property "at public auction on 12/23/2015." (Dkt. No. 47-35.) The deed was recorded on November 28, 2016. (*Id.*)

Plaintiff, initially appearing *pro se*, filed the present action on April 27, 2017. (Dkt. No. 1.) On February 14, 2018, the Court granted Defendants' motion to dismiss the complaint for failure to state a claim and granted Plaintiff leave to amend. (Dkt. No. 36.) Pursuant to the Court's leave, on March 16, 2018, Plaintiff—now represented by counsel—filed the First Amended Complaint, asserting causes of action for (1) Violations of the Real Estate Settlement Procedures Act ("RESPA"); (2) Violations of 18 U.S.C. § 1964 (Civil RICO); (3) Violations of the federal Truth in Lending Act ("TILA"); (4) Violations of the Fair Debt Collection Practices Act ("FDCPA"); (5) Declaratory Judgment that Plaintiff's Foreclosure and Lockout were Void; and (6) Willful Violation of Bankruptcy Automatic Stay. (Dkt. No. 38.)

On June 19, 2018, the Court denied Defendants' motion to dismiss with respect to Plaintiff's claim that the foreclosure sale was void because it violated an automatic bankruptcy stay. (Dkt. No. 57.) However, the Court granted Defendants' motion to dismiss with respect to all other causes of action. Plaintiff was granted leave to amend his causes of action under RESPA, RICO, and TILA. Plaintiff was

also granted leave to amend his claim that the foreclosure sale was void because the foreclosing party did not have the authority to foreclose.

On July 30, 2018, Plaintiff filed the SAC. Plaintiff did not reassert his causes of action under RICO or TILA in the SAC. However, he amended and reasserted his RESPA claim against WFB, and also amended his claim to set aside the allegedly void foreclosure sale. In addition to amending the allegations relating to the foreclosing party's lack of authority to foreclose, Plaintiff also amended the allegations relating to the foreclosure sale's violating the automatic bankruptcy stay.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Rather,

the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In order to meet this standard, (1) the complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When evaluating a Rule 12(b)(6) motion, the Court accepts all material factual allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construes them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts "do not, however, accept the truth of legal conclusions merely because they are cast in the form of factual allegations." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (internal quotations omitted). In addition to the allegations in the complaint, the Court may consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings,"[2] *Mir v. Little Co. of Mary*

---

[2] Defendants request that the Court take judicial notice of various publicly recorded documents and judicial records relating to Plaintiff and the property at issue. Plaintiff has not objected to the Court taking judicial notice of them. As judicial documents and matters of public record, they are properly subject to judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741,

*Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

Defendants assert multiple theories for why the complaint should be dismissed, or parts of it stricken. Because the Court agrees with Defendants that Plaintiff has not stated a claim for relief that is plausible on its face, the Court need not reach Defendants' alternative theories.

**A.  First Cause of Action: Violations of RESPA (asserted against WFB)**

RESPA requires servicers of a loan who receive a Qualified Written Request "for information relating to the servicing of such loan" to respond within 30 days. 12 U.S.C. § 2605(e). Under RESPA, "a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief ... that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (alterations in original).

Plaintiff alleges that he sent Defendant Wells Fargo "four (4) or more written requests" in September and November of 2016, seeking information including "servicing information about the loan, the documents appointing Defendant[] Wells Fargo bank loan servicer, the identity and contact information for the creditor of the Plaintiff['s] Note, a complete loan history, accumulated late fees and charges, and information to verify the validity of the purported debt owed to the Defendant Banks." (SAC ¶ 28.) Plaintiff further alleges that WFB "did not provide the information requested by Plaintiff." (SAC ¶ 29.)

---

746 (9th Cir. 2006). Accordingly, Defendants' requests for judicial notice are granted, but the documents will only be discussed insofar as they are relevant to the issues presented.

WFB's duty to respond does not extend to all requests for information relating to the loan, but only to requests for "information relating to the *servicing* of [the] loan." *Medrano*, 704 F.3d at 666 (emphasis added). "'Servicing' … does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Id.* at 666-67. The only requests alleged in the SAC that actually relate to the servicing of the loan are the requests for "servicing information about the loan," the "accumulated late fees and charges," the "loan history" (insofar as the latter request means only the history of transactions relating to the servicing of the loan), and potentially[3] "the documents appointing Defendant[] Wells Fargo bank loan servicer." The other requests identified by Plaintiff do not relate to the servicing of the loan and therefore did not give rise to a duty to respond by WFB.

Assuming *arguendo* that the SAC sufficiently alleges that WFB failed to respond to Plaintiff's requests for servicing information, the SAC fails to adequately plead injury resulting from that failure. The SAC includes only the following conclusory assertions: "[A]rmed with the information requested, Plaintiff would have been able to prevent foreclosure. Specifically, Plaintiff could have proven that Defendants did not own Plaintiff's home and did not therefore have any legal right to foreclose upon it; and additionally that overdue amounts alleged by Defendants were also not correct, also rendering foreclosure illegal and improper." (SAC ¶ 30.) However, the SAC does not explain how responses to Plaintiff's 2016 requests for information would have allowed Plaintiff to "prevent foreclosure" in 2015. Further, the SAC contains no factual allegations plausibly suggesting that the responses to Plaintiff's inquiries would have proved that the

---

[3] Because it does not affect the outcome, the Court accepts for purposes of this motion that the documents appointing Wells Fargo as the loan servicer constitute "information relating to the servicing of [the] loan."

foreclosure was unlawful. Plaintiff's conclusory assertions to this effect are not entitled to a presumption of truth in the absence of supporting factual allegations. *Iqbal*, 556 U.S. at 681. Accordingly, this cause of action is not sufficiently pleaded. Plaintiff was already granted leave to cure this defect but failed to do so, so further leave to amend is not warranted.

**B.     Fifth Cause of Action: Wrongful Foreclosure (asserted against WFB and BOA)**

Plaintiff requests a declaration that the foreclosure sale of his residence was unlawful and void as a matter of law. The Court's prior order identified two potentially viable bases in the FAC on which the foreclosure sale of the Property might be void, assuming sufficient facts could be alleged to support them: (1) the party invoking the trustee's power of sale was not the true beneficiary under the deed of trust; and (2) the foreclosure sale was conducted while Plaintiff's bankruptcy proceeding was pending. Each potential theory is discussed in turn below. (Dkt. No. 57 at 12.)

**1.     Plaintiff has not alleged sufficient facts to support his assertion that the party invoking the trustee's power of sale was not the true beneficiary.**

"[C]ourts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs the trustee to file a Notice of Default and initiate nonjudicial foreclosure." *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079, 1094 (2013) (quoting *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 973 (N.D. Cal. 2012)). However, "properly alleging a cause of action under this theory requires more than simply stating that the defendant who invoked the power of sale was not the true beneficiary under the deed of trust. Rather, a plaintiff asserting this theory must allege facts that show the defendant who invoked the power of sale was not the true beneficiary." *Glaski*, 218 Cal. App. 4th at 1094.

The SAC contains numerous conclusory assertions that "none of the foreclosing Defendants in this action had the right to declare default … or foreclose on … the Property." (SAC ¶ 17.) However, once stripped of these conclusory assertions, the SAC's factual basis for this conclusion becomes much less clear. However, two potential bases are discernible from the SAC, neither of which is sufficiently pleaded.

The first potential basis for the SAC's assertion that BOA lacked the authority to foreclose on the Property comprises the SAC's allegations that the assignment of Plaintiff's DOT from WFB to BOA was "signed by a Wells Fargo employee who was not authorized to sign it" and that it was "improperly notarized." (SAC ¶ 16.) This potential basis fails to state claim because borrowers do not have standing to challenge defects in an assignment that make the assignment merely voidable, as opposed to void ab initio. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 936 (2016). Plaintiff has not cited any authority suggesting that the assignment from WFB to BOA, despite its alleged defects, was void such that it could not be ratified by the parties. *Cf. Yvanova*, 62 Cal. 4th at 930 ("Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties."). Thus, this theory fails as a matter of law.

The second potential basis for asserting that Defendants lacked the authority to foreclose on the Property is the SAC's allegation that "during or about 2014," Plaintiff's loan was "sold by defendant Bank of America to investors." (SAC ¶ 17.) Thus, according to Plaintiff, FATSS was acting without authority when it conducted a trustee's sale of the Property. This cause of action is still not sufficiently pleaded. Accepting as true Plaintiff's allegation that Bank of America sold the Note around 2014, there are still not sufficient facts to plausibly suggest Plaintiff's entitlement to relief.

The "Notice of Default and Election to Sell under Deed of Trust" was recorded on July 25, 2011 (Dkt. No. 47-4) and multiple Notices of Trustee's Sale

were issued in 2011, 2012, and 2013 (Dkt. Nos. 47-5, 47-6, 47-7, 47-8.), all before the alleged transfer of Plaintiff's note in 2014. Although it is conceivable that the transferee of Plaintiff's Note in 2014 changed course and decided not to foreclose, Plaintiff has alleged no facts plausibly suggesting that this is the case. Absent allegations suggesting that the assignee of the Note revoked the prior notice of default and election to sell, Plaintiff has "not nudged [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's factual allegations in support of this theory do not meet the pleading standard established under *Twombly* and *Iqbal*.

2. **Plaintiff's amended claim that his pending bankruptcy proceeding voided the trustee's sale is not sufficiently pleaded.**

Plaintiff's alternative theory for why the foreclosure sale was void is that it was conducted in violation of an automatic bankruptcy stay. A pending bankruptcy proceeding would render the foreclosure sale void and not merely voidable. *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992). In order to sufficiently plead that the foreclosure sale was void due to Plaintiff's pending bankruptcy proceeding, Plaintiff must allege that the foreclosure sale occurred between the filing of Plaintiff's bankruptcy petition on December 23, 2015 and the dismissal of Plaintiff's bankruptcy case on April 11, 2016 (Dkt. No. 47-28).

The Court found this theory adequately pleaded in the FAC, which alleged that "[o]n December 23, 2015, notwithstanding that Plaintiff had that day, according to his information and belief prior to the sale, filed a Bankruptcy Petition so that his bankruptcy was pending at that time, Defendants conducted a foreclosure sale of [the Property]." (Dkt. No. 38 ("FAC") ¶ 20.) Although Defendants provided documents showing that the trustee's sale was noticed for 10:00 a.m. and Plaintiff's bankruptcy petition was entered after 5:00 p.m. (Dkt. Nos. 47-11, 47-26), the Court concluded that it could not take judicial notice of when the judicial foreclosure sale actually occurred, and thus was bound to accept

as true the FAC's allegation that the foreclosure sale occurred after the filing of Plaintiff's bankruptcy petition on December 23.

The SAC, however, no longer alleges that the foreclosure sale actually occurred on December 23. The relevant allegations now read: "On December 23, 2015, notwithstanding that Plaintiff had that day, according to his information and belief prior to the sale, filed a Bankruptcy Petition so that his bankruptcy was pending at that time, Defendants *allegedly* conducted a foreclosure sale of Plaintiff's home. Plaintiff is now informed and believes that the sale, which was recorded only during or about October of 2016, may have occurred at a later date and/or time than that alleged by defendants, or not in fact have occurred at all." (SAC ¶ 21 (emphasis added).)

The SAC—like the FAC—does allege that Plaintiff filed a bankruptcy petition "according to his information and belief prior to the sale." However, in the FAC, "the sale" referred to a foreclosure sale that "Defendants conducted." (FAC ¶ 20.) In the SAC, "the sale" refers to a foreclosure sale that only "allegedly" took place. (SAC ¶ 21.) The SAC does not allege when the foreclosure sale actually occurred, only that it "may have occurred at a later date and/or time than that alleged by defendants, or [may] not in fact have occurred at all." (SAC ¶ 21.) Plaintiff's failure to allege that the foreclosure sale actually occurred between the filing of his bankruptcy petition on December 23, 2015 and the dismissal of his bankruptcy case on April 11, 2016 is fatal to this cause of action.

**C.    Leave to amend is not warranted.**

Under different circumstances, the Court might be inclined to permit Plaintiff to amend the complaint one more time to include an allegation that Defendants did in fact conduct a foreclosure sale of the Property between the filing of Plaintiff's bankruptcy petition in December 23, 2015 and the dismissal of his bankruptcy case on April 11, 2016. However, based on the allegations in the SAC and counsel's representations at the hearing on Defendants' motion, it does

not appear that such an amendment could be made consistent with Rule 11. "By presenting to the court a pleading … an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances: … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

The SAC's allegations suggest that—beyond the information provided by Defendants, which Plaintiff rejects—Plaintiff does not have any independent information concerning when the foreclosure sale actually took place. This was corroborated by the responses of Plaintiff's counsel at the hearing, who stated "there is no evidence as of this time as to when the sale actually took place except the defendants' self-serving [evidence]." But a mere skepticism of Defendants' contrary evidence is not, without more, enough to support an allegation that the foreclosure sale took place while Plaintiff's bankruptcy case was pending. Rule 11 requires that a litigant have more than speculation before it may allege facts on which discovery is sought.

Plaintiff's counsel did point out that the Trustee's Deed Upon Sale was not executed until November 2016, which could cast doubt upon Defendants' contention that the foreclosure sale occurred on December 23, 2015. The Court need not decide whether this fact alone would be sufficient to support an allegation that the foreclosure sale occurred after December 23, 2015. Even assuming that it would be, it does not provide sufficient basis for alleging that the foreclosure sale occurred between December 23, 2015 and April 11, 2016, as necessary to support the conclusion that Plaintiff's bankruptcy case was pending when the foreclosure sale occurred.

In sum, it appears from the allegations in the SAC, as corroborated by counsel's representations at the hearing, that Plaintiff cannot, consistent with

Rule 11, allege that Defendants conducted a foreclosure sale of the Property between his filing for bankruptcy on December 23, 2015 and the dismissal of his bankruptcy case on April 11, 2016, as necessary to cure his final cause of action. Because leave to amend would effectively serve as an invitation to violate the rules of civil procedure, such leave will not be granted.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motions and dismisses the complaint without leave to amend. Accordingly, the Court **DENIES AS MOOT** Defendants' motion to strike parts of the complaint.

**IT IS SO ORDERED.**

DATED: October 10, 2018

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE